UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
SAMANTHA BINIENDA, on behalf of    )
herself and all others similarly   )
situated,                          )
                                   )
          Plaintiff,               )
                                   )
     v.                            )   C.A. No. 15-253 WES
                                   )
ATWELLS REALTY CORP. and           )
THE ONE, INC.,                     )
all d/b/a CLUB DESIRE and LUST     )
VIP,                               )
                                   )
          Defendants.              )
_____)

### MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Defendants Atwells Realty Corp. and The One, Inc. (collectively, "Defendants") moved to dismiss this action and compel arbitration (ECF No. 83), and to stay the action and amend the pre-trial scheduling order (ECF No. 85). For the reasons that follow, both motions are DENIED.

I.  Background

The facts as they relate to Defendants' motions are simple and undisputed. Plaintiff Samantha Binienda ("Plaintiff") began performing as an exotic dancer at Defendants' club in November 2013. On June 20, 2015, Plaintiff brought this putative class action, alleging, inter alia, that Defendants misclassified exotic dancers as independent contractors instead of employees, which

resulted in violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and Rhode Island state law. Both parties participated in the litigation, engaging in discovery and filing pre-trial motions.

During discovery, both parties discussed whether Plaintiff had ever signed Defendants' standard Entertainers Independent Contractor Agreement. Gerard DiSanto II ("DiSanto"), Defendants' general manager, testified that he did not know whether all of the dancers at the club had signed such a contract, and that many signed contracts had gone missing in the disorderly records room. Defs.' Mot. To Compel 2 (ECF No. 83-1). During Plaintiff's deposition on March 31, 2017, she was asked if she ever signed the standard contract, to which she replied, "No, I never did. I can specifically remember the first day I worked there, and I never signed a contract." Id.

After discovery closed, both parties filed cross-motions for summary judgment and cross-motions for class certification. At some point in June or July of 2017, DiSanto located the Entertainers Independent Contractor Agreement, which had been signed by Plaintiff on November 5, 2013 ("Binienda Contract"). On July 20, 2017, twenty-five months after Plaintiff filed the Complaint, Defendants filed the instant motion to compel arbitration pursuant to an arbitration provision within the

Binienda Contract.[1]   In response, Plaintiffs contend that Defendants waived their arbitration rights under the contract by waiting more than two years to move to compel arbitration.

## II. Discussion

### A. Threshold Matter

The parties dispute whether this Court or an arbitrator should decide the issue of waiver.  For the reasons that follow, this decision remains with the Court.

The Supreme Court in BG Group PLC v. Republic of Argentina explained that this threshold question — whether this Court or an arbitrator should decide the waiver issue — is guided by a set of presumptions.  134 S. Ct. 1198 (2014).  First, "courts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about 'arbitrability' . . . such as 'whether

---

[1] Paragraph 10 of the Binienda Contract provides:

> The entertainer/independent contractor agrees that all claims and disputes arising under or relating to this agreement shall be settled by binding arbitration in the state of Rhode Island pursuant to the Federal Arbitration Act (the "FAA").  The arbitration shall be conducted on a confidential basis pursuant to the Commercial Arbitration Rules of the American Arbitration Association. . . .  The Entertainer waives her right to litigate any controversy, dispute, claim or any other matter in a court of law, and waive the right to jury trial.  (Ex. A to Defs.' Mot. to Dismiss and Compel Arbitration 2 (ECF No. 83-2).)

the parties are bound by a given arbitration clause.'" Id. at 1206. However, "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration," such as "waiver, delay, or a like defense to arbitrability." Id. at 1207.

Although the Court in BG Group included "waiver" among the issues that arbitrators are presumed to decide, a review of prior Supreme Court and First Circuit precedent convinces this Court that the "waiver" contemplated in BG Group is not the litigation-conduct waiver that Plaintiffs allege in the instant case.

Traditionally, litigation-conduct waiver has been decided by the court, not an arbitrator. Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 14 (1st Cir. 2005). The First Circuit was presented with this very issue in Marie, which predates the BG Group decision. The Marie court grappled with two earlier Supreme Court decisions: Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, (2002), and Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444 (2003) (plurality opinion).

In Howsam, the arbitration provision provided that a dispute was not eligible for arbitration if more than six years had elapsed since the event giving rise to the dispute. 537 U.S. at 82. The Court held that "condition[s] precedent to arbitrability" and

procedural questions such as "waiver, delay, or a like defense to arbitrability . . . are presumptively not for the judge, but for an arbitrator, to decide." Id. at 84-85. The Court held that the six-year time limit was a procedural condition precedent to arbitrability, and therefore, a matter for the arbitrator to decide. Id. at 84-85. In Green Tree, the parties disputed whether their arbitration agreement permitted class arbitration. 539 U.S. at 452. The Court held that "[a]rbitrators are well situated to answer that question" because it "does not concern . . . judicial procedures," but rather, it "concerns contract interpretation and arbitration procedures." Id. at 452-53.

"The Court in both Howsam and Green Tree . . . stressed issues of comparative expertise. In the face of contractual silence, courts should presume that parties intend to give their disputes to the most able decisionmaker on a given issue, both for contractual and public policy reasons." Marie, 402 F.3d at 10. The Marie court also noted that "the Howsam and Green Tree rules exist partly 'to avoid . . . delay.'" Id. at 14 (quoting Shaw's Supermarkets, Inc. v. United Food & Commercial Workers Union, Local 791, 321 F.3d 251, 255 (1st Cir. 2003)). Finding that the district court was in the best position to decide issues of litigation-conduct waiver, the Marie court held "that the Supreme Court in Howsam and Green Tree did not intend to disturb the traditional

5

rule that waiver by conduct, at least where due to litigation-related activity, is presumptively an issue for the court." Marie, 402 F.3d at 14.

Contrary to Defendants' argument, BG Group simply restates the Howsam and Green Tree rules. Compare BG Group, 134 S. Ct. at 1207 (holding that arbitrators presumptively decide "waiver, delay, or a like defense to arbitrability") with Howsam, 537 U.S. at 84 (holding that "conditions precedent to arbitrability" and procedural questions such as "waiver, delay, or a like defense to arbitrability" are presumptively for an arbitrator to decide) and Green Tree, 539 U.S. at 453 (holding that arbitrators are well-suited to answer questions of arbitration procedures). Nothing in BG Group undercuts the holding in Marie, that the Supreme Court did not intend to alter traditional rule that courts presumptively decide issues of litigation-conduct waiver. See Vine v. PLS Fin. Servs., Inc., 689 F. App'x 800, 803 (5th Cir. 2017) (noting that "a majority of the [circuit court] decisions addressing litigation-conduct waiver pre-date BG Group, but the logic of those decisions interpreting Howsam is equally applicable to BG Group").

For the foregoing reasons, the Court will decide the merits of Plaintiff's litigation-conduct waiver argument.

B.  Waiver

"Federal law favors agreements to arbitrate," Joca-Roca Real Estate, LLC v. Brennan, 772 F.3d 945, 946 (1st Cir. 2014), yet "an arbitration provision has to be invoked in a timely manner or the option is lost," Rankin v. Allstate Ins. Co., 336 F.3d 8, 12 (1st Cir. 2003).  "Where we are dealing with a forfeiture by inaction (as opposed to an explicit waiver), the components of waiver of an arbitration clause are [1] undue delay and [2] a modicum of prejudice to the other side."  Id.  In analyzing these factors, "reasonable doubts as to whether a party has waived the right to arbitrate should be resolved in favor of arbitration."  In re Tyco Int'l Ltd. Sec. Litig., 422 F.3d 41, 44 (1st Cir. 2005).

1.  Undue Delay

Undue delay is determined by factors including: "the length of the delay, the extent to which the party seeking to invoke arbitration has participated in the litigation, the quantum of discovery and other litigation-related activities that have already taken place, [and] the proximity of the arbitration demand to an anticipated trial date."  Joca-Roca, 772 F.3d at 948.

Consideration of these factors reveals that Defendants unduly delayed asserting their arbitration rights.  See id. at 949 (holding that "[u]ndue delay [was] manifest" because discovery was nearly complete, a motion for summary judgment was imminent, and

trial was less than two months away).  Here, Plaintiff filed her complaint in June 2015, discovery ended in January 2017, Defendants filed a motion for summary judgment in May 2017, Plaintiff filed her motions for summary judgment and class certification in June 2017, and then Defendants moved to compel arbitration in July 2017. These facts are even more compelling than Joca-Roca because when Defendants filed the motion to compel arbitration, discovery was complete, motions for summary judgment were filed, and trial would soon follow.

Defendants put forth numerous arguments, none of which carry the day.  Defendants first argue that they continually asserted their arbitration rights during pre-trial conferences and in their proposed amended Answer.  However, the First Circuit has held that these actions only "articulate [Defendants'] potential intentions to raise the arbitrability . . . as an affirmative defense," but they are not assertions of the right to arbitration.  Lomas v. Travelers Prop. Cas. Corp. (In re Citigroup, Inc.), 376 F.3d 23, 27 (1st Cir. 2004).  Defendants first asserted their right when they filed the motion to compel arbitration on July 20, 2017.  See id.

Defendants next contend that their two-year delay in bringing the motion to compel arbitration was not undue because during Plaintiff's deposition, she denied ever signing an agreement.

Defendants argue that because of Plaintiff's denial, Defendants had no incentive to search for a phantom agreement, and had no basis by which to compel arbitration. However, the deposition took place on March 31, 2017, one year and nine months after the suit commenced, so Plaintiff's representation can, at most, account for the three-month delay between the March deposition and June or July, when Defendants found the Binienda Contract. Thus, Defendants' argument that Plaintiff's unclean hands bars her waiver argument is not convincing.

Next, Defendants rely on Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am. in support of their argument that they could not assert their right to arbitration because they could not locate the Binienda Contract. 97 F. App'x 462 (5th Cir. 2004). However, in that case, the defendant was in the process of "winding down its business and vastly downsizing its staff . . . and did not have the ready access to important documents that would be expected of a typical ongoing corporate enterprise." Id. at 465. Here, Defendants have no such excuse for their inability to locate the Binienda Contract for more than two years. The Binienda Contract was in Defendants' possession for the entirety of this case. Absent extenuating circumstances, business owners are presumed to possess a baseline level of constructive knowledge of the documents in their custody. Cf. id. at 466 ("We do not condone

a party's failure to apprise itself of its own key documents in litigation.").

Lastly, Defendants argue there was no undue delay because they did not <u>knowingly</u> sit on their arbitration rights. However, a showing of bad faith is not necessary to find undue delay. <u>See</u> <u>In re Citigroup</u>, 376 F.3d at 27 (finding undue delay when defendant waited eighteen months to file a motion to compel arbitration); <u>Menorah Ins. Co. v. INX Reinsurance Corp.</u>, 72 F.3d 218, 221-22 (1st Cir. 1995) (finding waiver after one year delay).

      2.    Prejudice

"When a defendant has failed to timely invoke its rights, and during that delay, the litigation has proceeded into discovery, it cannot, particularly in the context of a class action, claim that the class members subject to arbitration will not suffer prejudice." <u>In re Citigroup</u>, 376 F.3d at 28; <u>see also</u> <u>In re Tyco Int'l</u>, 422 F.3d at 46 (requiring a showing of a "modicum of prejudice"). Here, Plaintiff points to the time and money spent on two years of litigation that would be wasted if this Court compels arbitration. At the time Defendants moved to compel arbitration, discovery had been complete for five months, and Plaintiff had already responded to Defendants' summary judgment motion, and filed one of her own. The parties have advanced far

10

enough in the litigation that Plaintiff would be prejudiced if she were compelled to arbitrate her claims.

III.     Conclusion

For the reasons discussed above, the Court DENIES Defendants' Motion To Dismiss and Compel Arbitration (ECF No. 83).  The Court also DENIES Defendants' Motion to Stay (ECF No. 85) as moot.

IT IS SO ORDERED.

/s/ WESmith
William E. Smith
Chief Judge
Date: March 9, 2018